**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION**

JOSE TORRES-SOTO, on behalf of himself
and those similarly situated,

       Plaintiff-Petitioner,

v.

WILLIAM BARR, Attorney General of the
United States, JAMES MCHENRY, Director
of the Executive Office of Immigration
Review, KEVIN MCALEENAN, Acting
Secretary of the Department of Homeland
Security, MARK A. MORGAN, Acting
Director of U.S. Immigration and Customs
Enforcement (ICE), SEAN GALLAGHER,
Director of the ICE Atlanta Field Office, and
PHIL BICKHAM, Warden of Irwin County
Detention Center, in their official capacities
only,

       Defendants-Respondents.

Case No. 7:19-CV-00082

**COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF AND
HABEAS PETITION**

**CLASS ACTION**

## PRELIMINARY STATEMENT

1.     The federal government detains thousands of people each month, including asylum

seekers, lawful permanent residents, and victims of human trafficking, in two immigration prisons

in the Middle District of Georgia: the Irwin County Detention Center and Stewart Detention

Center. The government has charged these individuals with violations of civil immigration law

and is detaining them pending deportation proceedings. This detention is civil, and not criminal,

in nature.

2.     Many of these individuals are currently jailed solely because they are poor. Federal

immigration officials have determined that certain individuals can safely be released on cash bond,

because they are neither dangerous nor enough of a flight risk to warrant detention. But the officials refuse to take into account individuals' ability to pay when they set bond, and as a result, many individuals remain detained, simply because they cannot afford to pay that bond.

3.    Plaintiff Jose Torres-Soto is a father of three U.S. citizen children and one child who has obtained relief under Deferred Action for Childhood Arrivals ("DACA"). He has lived continuously in the United States for seventeen years. An immigration judge has determined that he is eligible for bond and is neither a danger to the community nor a flight risk. However, Mr. Torres-Soto remains detained in Irwin County Detention Center under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1226(a), on a bond that he cannot afford to pay, because the immigration judge set his bond amount without considering his ability to pay. As a result, he is unable to support his family and is severely limited in his ability to assist with litigating his deportation case.

4.    This class action challenges Defendants' policies and practices of setting unaffordable bonds for immigrants detained at Irwin County Detention Center and Stewart Detention Center, in violation of the Fifth Amendment's guarantees of due process and equal protection, and the Immigration and Nationality Act. As a matter of policy and practice, when setting bond, federal immigration officials are not required to and do not take into account individual financial circumstances or ability to pay. And these officials consistently fail to release individuals on their own recognizance or to impose alternative non-monetary conditions, such as electronic monitoring or in-person reporting requirements, even where these conditions are equally if not more effective at ensuring that individuals appear for future hearings. As a result, bond is set beyond what many people who have already been found eligible for release can pay, causing them

to remain in detention for months or even years as they await the resolution of their immigration cases.

5.      Because of Defendants' policies and practices, indigent detainees suffer severe and disproportionate consequences that detainees with greater financial means do not. They are separated from their children and partners, prevented from seeking and maintaining employment, deprived of adequate medical care, and forced to endure harsh living conditions. Further, whether the person is able to afford her bond can be the deciding factor for whether she is ultimately deported from the United States. Meaningful representation greatly improves the chance of obtaining relief in a person's immigration case, yet people in detention are far less likely to find attorney representation as compared to non-detained individuals. These individuals cannot gather evidence in support of their immigration cases or otherwise help to develop their claims for relief. And even when people who are detained are able to retain counsel, they face significant obstacles to meeting and conferring with their lawyers because of their detention.

6.      On behalf of himself and all others similarly situated, Plaintiff seeks declaratory and injunctive relief prohibiting Defendants from detaining people on a monetary bond without an inquiry into and findings concerning the individual's present ability to pay, and without a determination that conditional parole or alternative non-monetary conditions of release would not suffice to ensure the individual's future appearance. This Court's intervention is needed to ensure that Plaintiff and the proposed class members are not deprived of their fundamental constitutional right to liberty based on their poverty alone.

## JURISDICTION AND VENUE

7.      The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1651 (All Writs Act), 28 U.S.C. §§ 2201-2202 (Declaratory Judgment Act),

and 28 U.S.C. § 2241 (habeas corpus). Defendants have waived sovereign immunity pursuant to 5 U.S.C. § 702.

8.      Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to this action occurred in this District and Division.

## PARTIES

9.      Plaintiff-Petitioner Jose Torres-Soto is currently detained by U.S. Immigration and Customs Enforcement (ICE) at the Irwin County Detention Center in Ocilla, Georgia pending his immigration removal proceedings.

10.     Defendant-Respondent William Barr is sued in his official capacity as the Attorney General of the United States. Defendant Barr is the most senior official in the U.S. Department of Justice (DOJ), and has the authority to interpret the immigration laws and adjudicate custody hearings for individuals in detention, including those concerning bond determinations. He delegates this responsibility to the Executive Office for Immigration Review (EOIR), which is an office within DOJ that is responsible for adjudicating all immigration cases in the United States. EOIR is composed of numerous immigration judges sitting in immigration courts, as well as a Board of Immigration Appeals (BIA) that hears appeals from the immigration courts.

11.     Defendant-Respondent James McHenry is sued in his official capacity as the Director of EOIR, the agency within DOJ that is responsible for adjudicating immigration cases through the immigration courts and the BIA.

12.     Defendant-Respondent Kevin McAleenan is sued in his official capacity as the Acting Secretary of the Department of Homeland Security (DHS). In this capacity, he directs and oversees each of the component agencies within DHS, including Immigration and Customs Enforcement (ICE), and has ultimate authority over all policies, procedures, and practices relating

to ICE detention facilities, including those concerning bond determinations. He is ultimately responsible for ensuring that all individuals held in ICE custody are detained in accordance with the Constitution and all relevant laws.

13.    Defendant-Respondent Mark A. Morgan is sued in his official capacity as the Acting Director of ICE. In this capacity, he oversees the enforcement of the nation's immigration laws and directs the administration of ICE's detention policies and operations, including those concerning bond determinations.

14.    Defendant-Respondent Sean Gallagher is sued in his official capacity as the Director of the ICE Atlanta Field Office. In this capacity, he is responsible for the policies, procedures, and practices relating to the detention of immigrants, including those concerning bond determinations, in the Atlanta District. The Atlanta District covers detention facilities in Georgia, North Carolina, and South Carolina, including the Irwin County Detention Center and Stewart Detention Center. Defendant Gallagher has custody of Plaintiff Torres-Soto.

15.    Defendant-Respondent Phil Bickham is sued in his official capacity as the Warden of the Irwin County Detention Center. Defendant Bickham has custody of Plaintiff Torres-Soto and others similarly situated.

## LEGAL BACKGROUND

16.    The Immigration and Nationality Act (INA), 8 U.S.C. § 1226(a), authorizes the Attorney General to release individuals from immigration detention while their civil removal cases remain pending.

17.    Specifically, § 1226(a) provides that, "pending a decision on whether the alien is to be removed from the United States, . . . the Attorney General--

(1) may continue to detain the arrested alien; and
(2) may release the alien on--

(A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
(B) conditional parole . . . ."

8 U.S.C. § 1226(a).

18.     Under the INA and federal regulations, an ICE officer makes the initial custody determination as to whether a person detained under § 1226(a) should be released, and if so, whether on bond, conditional parole,[1] or other conditions of release. *See* 8 C.F.R. § 1236.1(c).

19.     The individual may seek review of the ICE custody determination by applying for a custody redetermination—commonly known as a "bond hearing"—before an immigration judge. The immigration judge is authorized "to detain the alien in custody, release the alien, and determine the amount of bond, if any, under which the respondent may be released." *Id.* §§ 1236.1(d)(1), 1003.19. The individual may then appeal the immigration judge's decision to the Board of Immigration Appeals (BIA). *Id.* §§ 1236.1(d)(3), 1003.19(f).

20.     After the bond hearing before the immigration judge, a request for a subsequent bond redetermination will "be considered only upon a showing that the alien's circumstances have changed materially since the prior bond redetermination." *Id.* § 1003.19(e).

21.     To obtain an order of release from detention by ICE or the immigration judge, the individual "must demonstrate . . . that such release would not pose a danger to property or persons, and that the [individual] is likely to appear for any future proceeding." *Id.* § 1236.1(c)(8); *see Matter of Guerra*, 24 I. & N. Dec. 37, 38-40 (B.I.A. 2006).

22.     The BIA has held that an immigration judge "has broad discretion in deciding the factors that he or she may consider in custody redeterminations." *Guerra*, 24 I. & N. Dec. at 40.

---

[1] Release on "conditional parole" pursuant to § 1226(a)(2)(B) is effectively the same as release on personal recognizance. *See Preap v. Johnson*, 303 F.R.D. 566, 574 (N.D. Cal. 2014); *Rivera v. Holder*, 307 F.R.D. 539, 543 (W.D. Wash. 2015).

## STATEMENT OF FACTS

**Defendants' Policies and Practices of Setting Unaffordable Bond for Civil Immigration Detainees in the Middle District of Georgia.**

23.     As a matter of policy and practice, immigration judges and ICE officers in the Middle District of Georgia are not required to, and do not consider, an individual's financial circumstances or ability to pay when setting bond amounts pursuant to 8 U.S.C. § 1226(a).

24.     There is no requirement that ICE or immigration judges consider an individual's ability to pay when setting a bond under § 1226(a). *See Hernandez v. Sessions*, 872 F.3d 976, 983 (9th Cir. 2017). The BIA has in fact stated in several unpublished decisions that "an alien's ability to pay the bond amount *is not a relevant* bond determination factor." *In re Castillo-Cajura*, 2009 WL 3063742, at *1 (B.I.A. Sept. 10, 2009) (emphasis added); *In re Sandoval-Gomez*, 2008 WL 5477710, at *1 (B.I.A. Dec. 15, 2008).

25.     Although § 1226(a) authorizes Defendants to set bonds at $1,500 or release individuals without bond on conditional parole, ICE officers in the Middle District of Georgia set bond amounts at much higher levels, typically at a minimum of $12,000.

26.     ICE officers are not required to, and do not consider, the individual's financial circumstances or ability to pay when making their initial bond determinations.

27.     In bond redetermination hearings, immigration judges with jurisdiction over the Middle District of Georgia similarly do not affirmatively inquire into the person's financial circumstances or ability to pay. If a detainee raises her inability to pay, immigration judges are not required to inquire about it or consider it when setting the bond amount. Immigration judges routinely do not make any findings on the record about what factors they have considered when setting the bond.

28.     Immigration judges with jurisdiction over the Middle District of Georgia routinely set bond at amounts that far exceed the minimum bond amount of $1,500—averaging $12,031 for detainees at Irwin and $11,206 for detainees at Stewart from May 2018 through May 2019.

29.     Immigration judges are not required to, and do not, consider whether alternative non-monetary conditions of release would adequately ensure that the individual will appear for future proceedings.

30.     Immigration judges with jurisdiction over the Middle District of Georgia claim that only ICE officers have the authority to release detainees on conditional parole, despite the lack of any such restriction in the statute. Thus, immigration judges believe that they must order the detainee to pay at least a $1,500 bond to obtain release, no matter the individual's financial or personal circumstances.

31.     Because immigration judges do not take into account an individual's ability to pay when setting bond, an individual cannot request a new bond redetermination based on "changed circumstances" when those circumstances involve changes that impact the person's financial situation, such as a partner losing a job or a child getting sick.

32.     If a detainee can afford to pay the full bond amount set by ICE at the initial custody determination or by the immigration judge at the bond redetermination hearing, ICE accepts the payment at one of its Enforcement and Removal Operations (ERO) Bond Acceptance Facilities and releases the detainee soon thereafter. However, ICE will continue to detain a person who cannot afford to pay the bond.

33.     By setting a bond in a particular case, Defendants have necessarily determined that detention is not needed to protect public safety and ensure appearance in court. The bond determination means that people who are wealthy enough to afford the bond will be released

immediately after payment, which means that Defendants believe they will not be a danger to society or fail to reappear. A poor person facing the exact same bond determination will likewise not be a danger to society or fail to reappear, but will remain detained because of her indigency.

34.     In contrast, in the criminal context, courts in Georgia and nationwide have been required to consider defendants' ability to pay when setting bail for decades.

35.     Moreover, criminal courts routinely permit pretrial detainees to be released on their own recognizance, or to post property or deposit bonds (where the detainee only must post collateral or a percentage of the full bond amount), or even unsecured bonds (which releases the detainee without requiring a payment, and the payment obligation is triggered only if the detainee fails to appear) to obtain release. However, Defendants require immigration detainees to pay the full cash value of the bond, even though § 1226(a) refers generally to "security approved by . . . the Attorney General."

36.     As a result of Defendants' policies and practices, individuals are detained by ICE in the Irwin County Detention Center and Stewart Detention Center on an arbitrary bond amount that ignores their ability to pay, even though Defendants have determined by setting bond that detention is not necessary to ensure public safety and appearance in court. In short, these individuals remain detained simply because they cannot afford to pay their bond amount.

**Civil Immigration Detainees in the Middle District of Georgia Experience High Bond Denial Rates, Unaffordable Bond Amounts, and Restricted Participation in Bond Hearings.**

37.     The United States federal government operates the world's largest immigration detention system, consisting of over 200 facilities throughout the country. The government locked up over 396,400 people in civil immigration detention in fiscal year 2018.

38.    ICE currently detains approximately 2,700 people in the Middle District of Georgia, primarily at two detention facilities: the Irwin County Detention Center and Stewart Detention Center.

### Irwin County Detention Center

39.    Irwin County Detention Center is a former county jail located in Ocilla, Georgia. Although Irwin County still owns the detention center, it is operated by LaSalle Corrections, a private for-profit company. LaSalle Corrections provides all staff and operational management services for the facility.

40.    Irwin County Detention Center houses around 800 individuals. Less than 25% of the people detained at Irwin County Detention Center are represented by an attorney. In 2018, non-detained people were *twice* as likely to have representation in cases pending before the Atlanta Immigration Court, where proceedings for individuals detained at Irwin County Detention Center are held.

41.    Individuals detained at Irwin County Detention Center are denied bond at high rates. Nationally, from May 1, 2018 to May 7, 2019, bond was granted in 42% of hearings where the person was bond eligible, whereas at Irwin that number was 26%. Moreover, those who are granted bond are frequently given bonds they cannot afford. During the same period, the average bond at Irwin was $12,031, and one in four bonds was higher than $15,000. Additionally, while the median bond nationally was $8,500, the median bond for Irwin County detainees was 18% higher—$10,000.

42.    Irwin County Detention Center is located approximately 185 miles away from the Atlanta Immigration Court. Bond redetermination hearings are often very short, and the proceedings largely take place off the record. Detainees' lawyers must be physically present in

Atlanta for the bond hearings, but detainees must remain at the detention center and appear via video-conferencing equipment in the courtroom. Because they are not physically present, detainees at Irwin County Detention Center have little interaction with the judge and cannot consult with their lawyers in person during their bond hearings. Although an interpreter is required to be present at the bond hearing, the interpreter will generally translate only the detainee's testimony and any questions or comments directed specifically to the individual. Thus, the detainee often cannot follow the bulk of the hearing, including the government attorney's argument as well as any conversations or colloquies between the immigration judge and counsel.

### *Stewart Detention Center*

43.     Stewart Detention Center is located in Lumpkin, Georgia. The facility is operated and staffed by CoreCivic, a private for-profit company formerly known as Corrections Corporation of America.

44.     Stewart Detention Center is one of the largest ICE detention facilities in the country. Almost 1,900 individuals are detained at the facility. Between 2001 and 2019, only 12% of detainees at Stewart Detention Center were represented by counsel—far below even the 25% representation rate of immigration detainees with cases before the Atlanta Immigration Court.[2]

45.     Detainees at Stewart Detention Center also experience high rates of bond denials and high bond amounts. Bond eligible individuals at Stewart received bonds in only 38% of bond hearings. For individuals who were granted bonds, the average bond was $11,206, and one in four bonds was greater than $12,000.

---

[2] Ingrid V. Eagly & Steven Shafer, *A National Study of Access to Counsel in Immigration Court*, 164 U. Penn. L. Rev. 1, 7, 38 (2015).

46.     People who are detained at Stewart Detention Center have their immigration proceedings heard before three immigration judges at the Stewart Immigration Court, located within the detention facility. People detained at Stewart have very few visits from family or legal aid due to the remoteness of this location.[3] "A large percentage of the population has been transferred to Stewart from other states, which makes family and attorney visits particularly difficult."[4]

47.     The attorneys for Stewart detainees are not required to be present in immigration court. If a detainee's lawyer is not physically present, the immigration judge calls the attorney by telephone for their client's hearing. Because the majority of Stewart detainees' lawyers are not physically present, there is little interaction between attorneys and their clients.

**Defendants' Policies and Practices Have Resulted in Plaintiff's Indefinite Detention Simply Because He Cannot Afford to Pay His Bail Amount.**

48.     A native and citizen of Mexico, Mr. Torres-Soto came to the United States in 2002 at the age of twenty-three and has lived continuously in Dalton, Georgia since then. He is the father of four children, three of whom are U.S. citizens aged 15, 13, and 3 and one aged 18 who has DACA relief.

49.     Prior to his detention, Mr. Torres-Soto worked as a machine operator for 15 years and was the primary breadwinner for his family. He earned roughly $2,700 a month, nearly all of which went towards paying for basic necessities such as groceries, utilities, and rent. Apart from traffic violations, Mr. Torres-Soto has no criminal record.

---

[3] *See* Project South, *Imprisoned Justice: Inside Two Georgia Detention Centers* 26 (May 2017), https://projectsouth.org/wp-content/uploads/2017/06/Imprisoned_Justice_Report-1.pdf.

[4] *Id.*

50.     On December 14, 2018, Mr. Torres-Soto was involved in a traffic accident with a police car. The officer arrested him and brought him to the jail in Dalton for failing to yield and driving without a license.

51.     In custody, Mr. Torres-Soto learned that there was an ICE hold on him. On or about December 19, 2018, he was picked up by ICE and brought to the detention center in Atlanta, then transferred to the Irwin County Detention Center later that day. Mr. Torres-Soto remained detained for several months. ICE set his bond at $18,000. However, Mr. Torres-Soto was not aware that he had received a bond from ICE.

52.     On May 2—nearly five months after he was brought to Irwin—Mr. Torres-Soto appeared for a master calendar hearing in immigration court before an immigration judge. Because hearings for people detained at Irwin are conducted via video conference, Mr. Torres-Soto could see only the immigration judge during the hearing, and not the government's attorney. The judge asked Mr. Torres-Soto if he wanted time to meet with an attorney, and Mr. Torres responded that he could not afford one. During the hearing, Mr. Torres-Soto asked if he could be released on bond. He watched as the judge began speaking to someone else in the room who he could not see, but who he believes was the government's attorney. After this conversation, the judge told him he would grant a bond of $18,000 but did not provide any explanation as to why he was setting bond at this amount. The translator provided interpretation only when the judge addressed Mr. Torres-Soto directly, so he could not understand what was said between the judge and the person off-screen. The judge did not inquire into Mr. Torres-Soto's financial circumstances or his ability to pay a bond, despite Mr. Torres-Soto stating he could not afford to hire an attorney, and the judge did not state if he considered whether he could be released on non-monetary conditions.

53.     Mr. Torres and his family do not have the means to pay this bond. His wife makes roughly $300 a week as a seamstress, and since his detention, his oldest daughter has begun working at a fast food restaurant after school to help support the family.

54.     Because of the Defendants' policy and practice of failing to consider immigration detainees' financial ability to pay a bond, Mr. Torres-Soto will remain detained as he pursues cancellation of removal and will be unable to earn income, provide childcare for his family, or participate fully in the development of his case.

**Defendants' Policies and Practices Injure Plaintiff in Myriad Ways.**

55.     Defendants' policies and practices described above not only result in indigent detainees remaining in prolonged detention at Irwin County Detention Center and Stewart Detention Center, but the continued detention also causes substantial additional harms to Plaintiff and the proposed class members.

56.     Because Mr. Torres-Soto and his family lack the resources to pay his $18,000 bond, he has been detained for over a month since the bond was set—and for over five months in total—and faces the prospect of months or years of additional time in detention until his case completes.

57.     The prolonged detention and the conditions at Irwin have caused harm to Mr. Torres-Soto physically and emotionally. Mr. Torres-Soto's family has also suffered emotional distress and financial hardship because of his continued detention.

58.      Plaintiff Mr. Torres-Soto's experience is similar to those of other proposed class members. For example, in one case of a detainee held at the Irwin County Detention Center, an immigration judge refused to lower a bond to an amount the detainee's family could afford despite the detainee's attorney explicitly raising the ability of her client—a single mother of two—to pay. The judge said he only considered flight risk and danger to the community, and that her ability to

pay did not impact either of those factors. This detainee remained in detention for several months after her bond hearing.

59.    Immigration detainees encounter significant difficulties in finding and retaining counsel, especially since many are from the Atlanta area but are detained at a geographically distant facility like Irwin County Detention Center or Stewart Detention Center. According to one study, non-detained individuals are five times more likely to find and retain counsel than those who are detained.[5]

60.    A detainee is far more likely to achieve a favorable outcome in her immigration proceedings if she has a lawyer. As the American Bar Association has observed, "the disparity in outcomes of immigration proceedings depending on whether noncitizens are unrepresented or represented is striking."[6] One study found not only that "represented detainees were almost seven times more likely than their pro se counterparts to be released from the detention center," but also that represented detainees won on the merits "in 21% of cases, ten-and-a-half times greater than the 2% rate for their pro se counterparts."[7] Because lack of counsel severely hurts a person's ability to obtain relief in her immigration proceedings, release from detention is often the critical factor in determining whether the person receives due consideration of her merits case and thus whether she is ultimately deported.

61.    People who are detained are also hindered from accessing other services that are important to presenting their cases on the merits, such as translation and interpretation services. In

---

[5] Eagly & Shafer, *supra*, at 32.

[6] ABA, Comm'n on Immigration, *Reforming the Immigration System: Proposals to Promote Independence, Fairness, Efficiency, and Professionalism in the Adjudication of Removal Cases* 5-3 (2010).

[7] Eagly & Shafer, *supra*, at 9, 70; Cal. Coal. for Universal Representation, *California's Due Process Crisis: Access to Legal Counsel for Detained Immigrants* 4 (2016).

addition, detention interferes with individuals' ability to obtain documentary evidence, to collect testimonial evidence or other support from family, friends, and co-workers, and to otherwise aid in developing their claims for relief.[8]

62.    The harms of prolonged detention go beyond detainees' immigration cases. People in immigration detention are separated from their families, often by large distances, and kept from finding jobs and earning money to support their loved ones. In many cases, detainees are separated from their U.S. citizen children for whom they are the primary earner and caregiver.

63.    Further, detainees are forced to endure severe conditions, including forced labor, inadequate medical care, and unhygienic living environments. For example, a 2017 investigation of Irwin found that its housing facilities are "dirty, dusty, and unsanitary," and that individuals at Irwin must endure "moldy infection-riddled bathrooms and unsanitary clothing." Additionally, immigrants detained at Irwin "almost unanimously reported finding objects in the food" and reported "being forced to eat rancid foods."[9]

64.    Similarly, people detained at Stewart and their attorneys have reported that the food and water conditions at Stewart are "particularly concerning"; "[i]n addition to food being frequently reported as spoiled or expired, foreign objects, such as hair, plastic, bugs, rocks, a tooth, and mice, were reportedly found repeatedly in the food." The water at Stewart has been described "as green, non-potable, smelling of feces, or completely shut off."[10] The lack of adequate access to medical care, mental health services, and prenatal care at these facilities has also been described as "alarming." For example, as of May 2017, there "were no medical staff members [at Stewart]

---

[8] *See* Emily Ryo, *Detained: A Study of Immigration Bond Hearings*, 50 Law & Soc'y Rev. 117, 145 (2016).

[9] *See* Project South, *Imprisoned Justice: Inside Two Georgia Detention Centers* 40-49 (May 2017), https://projectsouth.org/wp-content/uploads/2017/06/Imprisoned_Justice_Report-1.pdf.

[10] *Id.* at 31-32.

who spoke Spanish . . . , thus limiting the ability for detained immigrants and medical staff to communicate in a meaningful way.[11]

65.    Indeed, ICE itself has previously found medical care at these detention centers to be inadequate.[12]

## CLASS ACTION ALLEGATIONS

66.    Plaintiff seeks to certify a class for declaratory and injunctive relief pursuant to Federal Rule of Civil Procedure 23(a) and (b)(2), or, in the alternative, as a representative habeas action pursuant to procedures analogous to Rule 23. The class is defined as: "All individuals who are or will be detained pursuant to 8 U.S.C. § 1226(a) on a monetary bond set by an U.S. Immigration and Customs Enforcement officer and/or an immigration judge in the Middle District of Georgia."

67.    As set forth below, this action satisfies the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a).

68.    **Numerosity:** The class is so numerous that joinder of all members is impracticable. Plaintiff does not know the exact size of the class because that information is not public, but is within Defendants' control. Nevertheless, the size of the class is substantial, given that thousands of immigrants are detained at Irwin County Detention Center each year, hundreds of whom have had monetary bond set pursuant to § 1226(a). At Irwin, 90 people were detained for over 20 days after their bond was set, presumably because they were unable to post the bond amount set. At Stewart, 44 people were detained for over 20 days after their bond was set. In addition, this is a

---

[11] *Id.* at 36.

[12] *Id.*

forward-looking class, with new members joining it on an ongoing basis. Joinder of these unknown future class members is impracticable.

69.    Most of the class members are low-income individuals who will likely lack financial resources to bring an independent action or to be joined in this action. Joinder of every member of the class would be impracticable.

70.    **Commonality:** Plaintiff raises claims based on questions of law and fact that are common to, and typical of, the putative class members they seek to represent. Questions of law and fact common to the class include:

      a.    Whether Defendants fail to require that ICE officials and immigration judges consider ability to pay or individual financial circumstances when setting bond pursuant to 8 U.S.C. § 1226(a);

      b.    Whether Defendants fail to require that ICE officials and immigration judges consider alternative non-monetary conditions of release when setting bond pursuant to 8 U.S.C. § 1226(a);

      c.    Whether immigration judges with jurisdiction over immigrants detained in the Middle District of Georgia refuse to grant conditional parole to people in detention;

      d.    Whether immigration judges with jurisdiction over immigrants detained in the Middle District of Georgia fail to make on-the-record findings about the factors they have considered in determining bond;

      e.    Whether Defendants' policies and practices of setting monetary bond under 8 U.S.C. § 1226(a) without inquiry into and findings concerning a person's ability to pay violate the Fifth Amendment and the Immigration and Nationality Act;

f.    Whether Defendants' policies and practices of setting monetary bond under 8 U.S.C. § 1226(a) without consideration of alternative non-monetary conditions of release violate the Fifth Amendment and the Immigration and Nationality Act;

g.    Whether, as a general policy or practice, the government requires immigration detainees to post in cash the full amount of their bonds to secure their release on bond;

h.    Whether Defendants' policies and procedures with respect to bond redetermination hearings violate the Fifth Amendment and the Immigration and Nationality Act; and

i.    Whether immigration judges' refusal to consider granting conditional parole in custody redetermination hearings for people detained pursuant to 8 U.S.C. § 1226(a) violates the Immigration and Nationality Act.

71.    **Typicality:** The claims asserted by Plaintiff are typical of those of the proposed class. The injuries of the Plaintiff all arise out of the Defendants' standard policies and practices. Moreover, the claims of Plaintiff are materially identical to those of the putative class members. The answer to whether Defendants' policies and practices are unconstitutional and unlawful will determine the claims of Plaintiff, and every other member of the proposed class.

72.    **Adequacy:** Plaintiff will fairly and adequately protect the interests of the proposed class. Neither Plaintiff nor their counsel have interests that conflict with the interests of the putative class members.

73.    **Rule 23(b)(2):** This action also satisfies the requirements of Rule 23(b)(2), because Defendants have acted on grounds generally applicable to the proposed class. Specifically, Defendants maintain policies and procedures under which ICE officers and immigration judges are not required to consider, and do not consider, class members' financial circumstances or

alternative non-monetary conditions of release when setting bond under § 1226(a). Thus, injunctive and declaratory relief is appropriate and necessary with respect to the class as a whole.

74.    **Rule 23(g):** Plaintiff is represented by attorneys from the Southern Poverty Law Center, the American Civil Liberties Union Foundation, and the American Civil Liberties Union Foundation of Georgia experienced in class-action and complex litigation involving constitutional law, civil rights law, and immigration law. Counsel have the resources, expertise, and experience to prosecute this action.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**Fifth Amendment to the Constitution**
**(Due Process)**

75.    Plaintiff, on behalf of himself and others similarly situated, re-alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

76.    The Fifth Amendment's Due Process Clause provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law."

77.    Civil immigration detainees, including Plaintiff, are "persons" who may not be deprived of liberty without due process of law.

78.    The Due Process Clause permits civil immigration detention only where such detention is reasonably related to the government's interests in preventing flight and protecting the community from danger, and requires adequate procedures to ensure that detention is serving those goals.

79.    The Due Process Clause prohibits jailing a person solely because of her inability to make a monetary payment. Thus, due process prohibits detaining a civil immigration detainee on

a monetary bond without determining whether a lower bond amount or alternative non-monetary conditions of release would ensure her future appearance.

80.     Defendants violate Plaintiff's due process rights by subjecting him to a system of wealth-based detention in which he remains detained because he cannot afford a monetary amount of bail, without inquiry into or findings concerning his ability to pay, and without a determination and findings concerning whether alternative non-monetary conditions of release would mitigate flight risk.

## SECOND CLAIM FOR RELIEF
### Fifth Amendment to the Constitution
### (Equal Protection)

81.     Plaintiff, on behalf of himself and others similarly situated, re-alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

82.     The Fifth Amendment prohibits the federal government from denying any person the equal protection of the laws.

83.     Defendants discriminate against indigent detainees by detaining people who cannot afford their monetary bond while releasing similarly situated individuals who have sufficient financial resources to pay their bond.

84.     The Fifth Amendment's equal protection guarantee does not permit Defendants to detain Plaintiff on a monetary bond without consideration of his financial circumstances and a determination of whether a lower bond amount or alternative non-monetary conditions of release would mitigate flight risk.

### THIRD CLAIM FOR RELIEF
**Immigration and Nationality Act, 8 U.S.C. § 1226(a)**
**(Failure to Consider Ability to Pay)**

85.     Plaintiff, on behalf of himself and others similarly situated, re-alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

86.     Under 8 U.S.C. § 1226(a), Defendants are authorized to release civil immigration detainees, including Plaintiff, on a monetary bond of at least $1,500 or on conditional parole.

87.     Section 1226(a), as correctly interpreted, requires that the bond or other conditions of release for detained individuals be reasonable. A reasonable bond or conditions of release cannot be determined without adequately considering detainees' financial circumstances and whether alternative non-monetary conditions of release would mitigate flight risk.

88.     Defendants' detention of Plaintiff and the proposed class members under § 1226(a) without such protections violates the Immigration and Nationality Act.

### FOURTH CLAIM FOR RELIEF
**Immigration and Nationality Act, 8 U.S.C. § 1226(a)**
**(Conditional Parole)**

89.     Plaintiff, on behalf of himself and others similarly situated, re-alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

90.     Under 8 U.S.C. § 1226(a), Defendants are authorized to release detained immigrants, including Plaintiff, on a monetary bond of at least $1,500 or on conditional parole.

91.     Notwithstanding this statutory command, immigration judges with jurisdiction over immigrants detained in the Middle District of Georgia refuse to grant requests for conditional

parole, on the basis that § 1226(a) limits immigration judges to ordering release on a minimum $1,500 bond.

92.    Immigration judges act pursuant to a policy or practice under which only ICE officials, not immigration judges, have the authority to grant conditional parole to individuals detained under § 1226(a).

93.    Defendants' policy or practice of detaining Plaintiff and proposed class members without considering their requests for conditional parole at bond redetermination hearings violates the Immigration and Nationality Act, 8 U.S.C. § 1226(a).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court provide the following relief:

a.    Assume jurisdiction over this action;

b.    Certify the class described above under Rules 23(a) and (b)(2) of the Federal Rules of Civil Procedure, represented by Plaintiff;

c.    Declare that Defendants' policies and practices described herein violate Plaintiff's rights under the Fifth Amendment of the United States Constitution and the Immigration and Nationality Act;

d.    Enter an order enjoining Defendants from (i) detaining an individual on a monetary bond or alternative, non-monetary conditions of supervision pursuant to 8 U.S.C. § 1226(a) without an inquiry into and findings on the record that a bond or conditions of supervision are necessary to mitigate flight risk; (ii) detaining individuals on monetary bond without an inquiry into and findings on the record concerning the individual's present ability to pay; (iii) detaining individuals on monetary bond in any amount greater than necessary to mitigate flight risk; (iv) when setting a monetary bond amount above what a person can pay, detaining the person when

alternative non-monetary conditions of supervision are sufficient to mitigate flight risk; (v) detaining an individual on a monetary bond amount without an inquiry into and findings on the record concerning why conditions of supervision are not sufficient to mitigate flight risk; and (v) failing to provide adequate procedural safeguards in individual bond hearings;

        e.      Grant Plaintiff's writ of habeas corpus and order a bond hearing for Plaintiff in compliance with the injunctive relief requested herein;

        f.      Award Plaintiff costs and reasonable attorney fees; and

        g.      Order such other relief as the Court deems just and appropriate.

DATED this 6th day of June, 2019.          Respectfully submitted,

/s/ Daniel Werner
Daniel Werner, GA Bar No. 422070
SOUTHERN POVERTY LAW CENTER
P.O. Box 1287
Decatur, Georgia 30031
P: 404-521-6700
F: 404-221-5857
E: daniel.werner@splcenter.org

Ivy Wang*
Neil K. Sawhney*
SOUTHERN POVERTY LAW CENTER
201 St. Charles Avenue, Suite 2000
New Orleans, Louisiana 70170
P: 504-228-7279
F: 504-486-8947
E: ivy.wang@splcenter.org
E: neil.sawhney@splcenter.org

Samuel Brooke*
Ellen Degnan*
SOUTHERN POVERTY LAW CENTER
400 Washington Avenue
Montgomery, Alabama 36104
P: 334-956-8200
F: 334-956-8481
E: samuel.brooke@splcenter.org
E: ellen.degnan@splcenter.org

Michael K. T. Tan*
ACLU FOUNDATION IMMIGRANTS'
RIGHTS PROJECT
125 Broad Street, 18th Floor
New York, New York 10004
P: 212-549-2660
F: 212-549-2654
E: mtan@aclu.org

Sean J. Young, GA Bar No. 790399
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF GEORGIA, INC.
1100 Spring St. NW, Suite 640
Atlanta, Georgia 30309
P: 770-303-8111
E: syoung@acluga.org

*application for pro hac vice pending

**Attorneys for Plaintiff-Petitioner**